IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TOYA Y. REED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. |
| v. | § | |
| | § | 1:15-CV-789 |
| AVALON CORRECTIONAL | § | |
| SERVICES, INC., AVALON | § | Jury Demanded |
| STAFFING, L.L.C., AVALON TX | § | |
| CORRECTIONS, L.L.C. | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff Toya Y. Reed ("Plaintiff" herein) files this Original Complaint and Jury Demand against Defendant Avalon Correctional Services, Inc., Avalon Staffing, L.L.C., and Avalon TX Corrections, L.L.C. (collectively, "Defendants" herein) under the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA") and the False Claims Act, 31 U.S.C. § 3730(h) ("FCA"). She respectfully shows as follows:

**I. NATURE OF SUIT**

1. The FLSA was passed in 1938 in an attempt to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed." *Walling v. Helmerich & Payne*, 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207(a)); 29 U.S.C. § 215(a)(2). The FLSA also

makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has [engaged in protected activity]." 29 U.S.C. § 215(a)(3). Defendant violated the FLSA by failing to pay employees, including the Plaintiff, at one-and-one-half times their regular rates of pay for all hours worked within a workweek in excess of forty hours. In addition, Defendants have retaliated against Plaintiff by terminating Plaintiff's employment because she complained of Defendants' acts made unlawful under the FLSA.

2.      The FCA provides that "Any employee . . . shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop [one] or more violations of this subchapter." 31 U.S.C. § 3730(h)(1). Defendants have violated the FCA by terminating Plaintiff because of her lawful acts, and for her efforts to stop violations under 31 U.S.C. Chapter 37, Subchapter III.

## II. PARTIES

3.      Plaintiff Toya Reed is an individual who resides in Travis County, Texas. At all times relevant to this action, Plaintiff was each of the Defendants' (1) employee pursuant to 29 U.S.C. §203(e)(1) and (2) employee, contractor, or agent pursuant to 31 U.S.C. § 3730(h). Pursuant to 29 U.S.C. §216(b), she has consented to be a party-plaintiff in this action and her consent form is attached hereto as "Exhibit A," and incorporated herein by reference as though fully set forth.

4.      Defendant Avalon Correctional Services, Inc. is a foreign for-profit corporation that is authorized to conduct business, and that is conducting business in Texas. At all times relevant to this action Defendant Avalon Correctional Services, Inc. was Plaintiff's employer pursuant to 29 U.S.C. §203(d) and 29 U.S.C. § 3730(h). Defendant Avalon Correctional Services, Inc. may be

served with process pursuant to Federal Rule of Civil Procedure 4(e)(1) by service on its registered agent for service, CT Corporation Systems, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

5.      Defendant Avalon Staffing, L.L.C. is a foreign limited liability company that is authorized to conduct business, and that is conducting business in Texas.  At all times relevant to this action Defendant Avalon Staffing, L.L.C. was Plaintiff's employer pursuant to 29 U.S.C. §203(d) and 29 U.S.C. § 3730(h). Defendant Avalon Staffing, L.L.C. may be served with process pursuant to Federal Rule of Civil Procedure 4(e)(1) by service on its registered agent for service, Mr. Patrick Sullivan, 3154 East Highway 71, Del Valle, Texas 78617.

6.      Defendant Avalon TX Corrections, L.L.C. is a domestic limited liability company that is authorized to conduct business, and that is conducting business in Texas.  At all times relevant to this action Defendant Avalon Staffing, L.L.C. was Plaintiff's employer pursuant to 29 U.S.C. §203(d) and 29 U.S.C. § 3730(h). Defendant Avalon TX Corrections, L.L.C. may be served with process pursuant to Federal Rule of Civil Procedure 4(e)(1) by service on its registered agent for service, Mr. Michael Sullivan, 3154 East Highway 71, Del Valle, Texas 78617.

### III. JURISDICTION AND VENUE

7.      This Court has jurisdiction in this matter because Plaintiff asserts claims arising under federal law.  Specifically, Plaintiff asserts claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. and the False Claims Act, 31 U.S.C. §3730(h). This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331.

8.      Venue is proper in the Austin Division of the United States District Court for the Western District of Texas.  Inasmuch as all or a substantial part of the events giving rise to this lawsuit occurred in Travis County, Texas, venue is proper under 28 U.S.C. § 1391(b).

## IV. COVERAGE UNDER THE FLSA

9.  At all material times, Defendants have each acted, directly or indirectly, in the interest of an employer with respect to Plaintiff.

10. At all times hereinafter mentioned, Defendants have each been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

11. At all times hereinafter mentioned, Defendants have been an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

12. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

13. At all times hereinafter mentioned, Plaintiff was an individual "employee" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207 and whom Defendants at all relevant times "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

## V. FACTUAL ALLEGATIONS

14. Defendants are government contractors. They contract with the federal government, and several state governments, to provide reintegration services for non-violent federal offenders serving the last 6 to 9 months of their sentences. Defendants operate these federal reintegration

programs on behalf of the United States Bureau of Prisons ("BOP") in Texas, Wyoming, and Oklahoma. Defendants operate a Residential Reentry Center ("RRC") in Travis County, Texas.

15. Plaintiff Toya Reed was employed by Defendants from April 2012 until her unlawful termination on July 15, 2015. Plaintiff began working for Defendants as a client monitor. From April 2012 until the time of her termination, Plaintiff received five promotions in the following order: client monitor assistant supervisor, client monitor supervisor, intake coordinator, case manager, and, finally, Home Confinement Officer. Throughout her employment, Plaintiff was a non-exempt employee, and thus entitled to the protections of the FLSA.

16. Plaintiff held the Home Confinement Officer position when Defendants unlawfully terminated her employment on July 15, 2015. In that position, Plaintiff monitored federal offenders in the program at work, at home, or in other public places. Plaintiff was compensated on an hourly basis. As discussed in greater detail below, she routinely and regularly worked in excess of 40 hours in a work-week for which Defendants failed to compensate her at a rate not less than time-and-one-half her regular rate of pay for those hours worked in excess of 40.

17. Plaintiff's performance throughout her employment with Defendants was good. She did receive one write-up, in December 2013. However, after that incident, Defendants promoted Plaintiff three more times.

18. Plaintiff held the Home Confinement Officer position from approximately the summer of 2014 until her termination on July 15, 2015. Throughout her tenure as a Home Confinement Officer, Plaintiff reported directly to Director of the Defendants' BOP program, Ms. Tina Hendley. At the time of Plaintiff's termination, Ms. Hendley, reported to Defendants' vice president, Mr. Patrick Sullivan; and Mr. Sullivan reported directly to Defendants' president, Capt. Brian Costello.

19. Plaintiff was one of two Home Confinement Officers working under the federal BOP program at Defendants' Austin facility. The other Austin Home Confinement Officer was Mr. Hector Arteaga. On June 22, 2015, Ms. Hendley told Plaintiff that Mr. Arteaga had been hospitalized, and that Plaintiff would be responsible for monitoring all of the federal offenders subject to Home Confinement monitoring until his return. That is, Plaintiff's work load was doubled.

20. At that time, Plaintiff was aware of Ms. Hendley's disdain for paying overtime compensation. For example, Ms. Hendley has signed a memorandum to the staff that says, among other things, that "No OT means ZERO OT. Not 1 minute over. If you cannot find a way to ensure this is happening from here forward, you will be the proud recipient of a 3 day, non-paid, suspension for starters." As a result of sentiments like these, and knowing that her work load was increasing, Plaintiff asked Ms. Hendley for assurance that Defendants would compensate her for the necessary overtime. Ms. Hendley responded with words to the effect of, "yes, I don't have a choice right now."

21. The BOP requires that its contractors monitoring offenders make a certain number of visits with each offender during a given month. The BOP further requires its contractors to certify compliance with those requirements by maintaining appropriate documentation of the weekly monitoring visits. The BOP requires that all visits be documented, and that the Home Compliance Officer and the offender affirm with their signatures that the visit had occurred as stated.

22. After Ms. Hendley directed Plaintiff to assume responsibility for Mr. Arteaga's offender monitoring visits, Plaintiff began to look into what Mr. Arteaga had accomplished during the month of June 2015. She discovered that Mr. Arteaga had not completed the documentation required under the BOP program. Plaintiff further discovered that Mr. Arteaga had not done

much, if any, work during the month of June 2015, and that there were a number of federal offenders whom Mr. Arteaga had not monitored for the entire month of June 2015.

23.     On the same day, June 22, 2015, Plaintiff told Ms. Hendley what she had discovered. In response, Ms. Hendley told Plaintiff that she knew that Mr. Arteaga had not performed the June 2015 monitoring, and directed Plaintiff to falsify BOP-required documentation. Specifically, Ms. Hendley ordered Plaintiff to obtain signatures from the offenders affirming that visits had occurred, when they had not occurred. Ms. Hendley also directed Plaintiff to sign the documents affirming that she was the Home Confinement Officer who performed those June 2015 monitoring visits.

24.     During that same meeting on June 22, 2015, Ms. Hendley also destroyed documents that showed that the monitoring visits had not in fact occurred. As Ms. Hendley did so, she told Plaintiff not to worry about it because the offenders for whom she was destroying the documentation would be out of Defendants' program by the time BOP performed any audit. Ms. Hendley then told Plaintiff that what just happened "does not leave this office," or words to that effect.

25.     Plaintiff told Ms. Hendley that she felt very uncomfortable about signing the documents, and Plaintiff did not sign the documents. Ms. Hendley eventually obtained Mr. Arteaga's signature on the documents. As explained below, Plaintiff complained about these events to Ms. Hendley's supervisor, Mr. Sullivan, on July 13, 2015. Ms. Hendley fired Plaintiff two days later.

26.     In addition, during her employment as a Home Confinement Officer, Plaintiff worked in excess of 40 hours per week, but was not paid at a rate not less than time-and-one-half her regular rate of pay for all those hours. Defendants have knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay overtime compensation to Plaintiff and those similarly situated.

27. More specifically, Ms. Hendley altered time sheets to remove overtime hours worked by Plaintiff, and otherwise required Plaintiff to work off-the-clock. Defendants have failed and refused to pay all overtime owed to Plaintiff for work she performed. For example, during the week of June 22, 2015, Plaintiff worked 41.8 hours, but was only compensated for 39.97 hours. The reason for this difference was that Ms. Hendley altered a time entry to reflect that Plaintiff worked 1.83 hours fewer hours than she actually worked on June 24, 2015. Ms. Hendley did so with a time clock missed punch / edit request form dated June 29, 2015.

28. Plaintiff specifically complained about the Defendants' failure to pay overtime compensation to her. She first complained to Ms. Hendley and she then complained to Mr. Patrick Sullivan. In early July, 2015, Plaintiff complained to Ms. Hendley that Ms. Hendley had removed from her time sheets overtime hours that Plaintiff had worked. Ms. Hendley's initial response was something to the effect that "well, yes I did because you're not supposed to be paid overtime." Ms. Hendley then became rude and aggressive, and demanded to know "how can I prove you were working?" Ultimately, Ms. Hendley did not address Plaintiff's complaints.

29. Plaintiff later complained to Ms. Hendley's direct supervisor and Defendants' vice president, Mr. Patrick Sullivan. Plaintiff made that complaint on the afternoon of Monday, July 13, 2015. During that meeting, Plaintiff told Mr. Sullivan that Ms. Hendley had altered her time sheets to remove overtime hours that she had worked. Plaintiff also told Mr. Sullivan that she had proof that Ms. Hendley had done so on at least one occasion in the form of text messages and the falsified time clock missed punch / edit request form, dated June 29, 2015. Mr. Sullivan told Plaintiff that he would have to forward the information to the Defendants' attorneys for review.

30. During that same July 13, 2015 meeting, Plaintiff also told Mr. Sullivan that Ms. Hendley had asked her to falsify the documentation of BOP-required offender visits during June 2015.

Because he claimed that he was unaware of BOP requirements, Plaintiff first explained to Mr. Sullivan the BOP-required practices of maintaining that documentation. She then told Mr. Sullivan that Ms. Hendley directed her to falsify those documents on June 22, 2015 by affirming with her signature that monitoring visits had occurred when, in fact, they had not occurred. Plaintiff told Mr. Sullivan that it was a difficult decision for her to make these complaints to him because she was concerned about retaliation from Ms. Hendley. Mr. Sullivan assured Plaintiff that her complaints would remain confidential.

31.     Despite that assurance, on the following day, July 14, 2015, a case manager for Defendant told Plaintiff that Ms. Hendley had that day learned that a complaint had been made against her for falsifying documents.

32.     On the following day, July 15, 2015, Tina Hendley fired Plaintiff in retaliation for her good faith reports and complaints of Defendants' unlawful conduct. In the letter of July 15, 2015 documenting the rationale for Plaintiff's termination, Ms. Hendley cited as a reason: "Regrettably, you have chosen to complain about the conditions of your employment and working environment when there is no reason to do so." The other reasons that Ms. Hendley cites for Plaintiff's termination are false.

## VI. CAUSES OF ACTION

**A.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT**

33.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 3 through 32, inclusive.

34.     During the relevant period, Defendants have violated and are violating the provisions of Section 7 of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing Plaintiff in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as stated herein above, for workweeks longer than 40 hours without compensating her for

work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates of pay for which she was employed. Defendants have acted willfully in failing to pay Plaintiff in accordance with applicable law.

35. For Defendants' violation of Section 15(a)(2) of the FLSA, Plaintiff is also entitled to an award of liquidated damages, attorney's fees, costs and expenses of suit, for which she hereby sues.

B. **UNLAWFUL RETALIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT**

36. Plaintiff incorporates by reference the allegations set forth in Paragraphs 3 through 32, inclusive.

37. Defendants have violated and are violating Section 15(a)(3) of the FLSA, 29 U.S.C. §215(a)(3).

38. As a direct and proximate result of Defendants' unlawful acts under Section 15(a)(3) of the FLSA, Plaintiff has suffered, and will continue into the future to suffer (1) lost wages and benefits, both past and future and (2) emotional pain, suffering and anguish, all of which is recoverable under Section 16(b) of the FLSA, and for which she hereby sues.

39. For Defendants' violation of Section 15(a)(3) of the FLSA, Plaintiff is also entitled to an award of liquidated damages, attorney's fees, costs and expenses of suit, for which she hereby sues.

C. **UNLAWFUL RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT**

40. Plaintiff incorporates by reference the allegations set forth in Paragraphs 3 through 32, inclusive.

41. Defendants have violated and are violating the False Claims Act, 31 U.S.C. § 3730(h).

42. As a direct and proximate result of Defendants' unlawful acts under 31 U.S.C. § 3730(h), Plaintiff has suffered, and will continue into the future to suffer (1) lost wages and benefits, both

past a future and (2) emotional pain, suffering and anguish, both of which are recoverable under 31 U.S.C. §3730(h)(2), and for which she hereby sues.

43.     For Defendant's violation of the False Claims Act, Plaintiff is entitled to an award of two times back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees, for which she hereby sues.

## VII. JURY DEMAND

44.     Plaintiff hereby makes a demand for trial by jury on all issues, claims and defenses so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court order a jury trial at the earliest practicable date and that, upon final hearing, this Court grant Plaintiff judgment against Defendants, jointly and severally, for the following:

   a.   Unpaid overtime compensation due to Plaintiff;

   b.   Actual damages, including appropriate back pay and other benefits;

   c.   Liquidated damages equal in amount to the unpaid overtime compensation and back pay found due to Plaintiff, as allowed under 29 U.S.C. § 216(b);

   d.   An equal amount to appropriate back pay and other benefits, as allowed under 31 U.S.C. § 3730(h)(2);

   e.   Reinstatement, or front pay, including benefits, in lieu of reinstatement;

   f.   All special damages, including damages for emotional pain, suffering and anguish;

   g.   All other relief necessary to make Plaintiff whole, as required by 31 U.S.C. §3730(h);

    h.      Attorneys' fees;

    i.      Pre-judgment and post-judgment interest in the maximum amounts allowed by law;

    j.      All costs and expenses;

    k.      Expert witness fees; and

    l.      Such other and further relief, legal or equitable, to which Plaintiff may be entitled.

Respectfully submitted,

**MORELAND LAW FIRM, P.C.**
13590 Ranch Road 12
Wimberley, Texas 78676
Telephone:    512/782-0567
Facsimile:     512/782-0605


By: */s/ Edmond S. Moreland, Jr.*
      Edmond S. Moreland Jr.
      Texas State Bar No. 24002644
      edmond@morelandlaw.com

**ATTORNEY FOR PLAINTIFF,
TOYA Y. REED**

# EXHIBIT A

## NOTICE OF CONSENT

I, Toya Y. Reed, hereby consent to become a party plaintiff in the lawsuit in which this consent is filed. This lawsuit is brought under the Fair Labor Standards Act to recover (1) all unpaid overtime compensation from my former employer, and (2) all available damages and other remedies for my former employer's retaliation against me in violation of the Fair Labor Standards Act.

Respectfully Submitted,

Toya Y. Reed
_____
Signature

09-08-15
_____
Date